Good morning, Your Honor. May it please the Court, Your Honors, I should say. May it please the Court, Brian King is my name. I'm representing the appellants in this case. This case deals with a significantly and seriously disturbed young man, E.R. He was treated at a residential treatment center, Intercept Residential Treatment Center, back in 2020 and 2021. His insurance carrier at the time was Blue Shield of California. He submitted his claims, hoping that they would be paid, expecting they would be paid, and they were denied. And the basis for the denial was that the reviewing physicians at Blue Shield said, we just don't think that it's medically necessary. Under the guidelines that we have are medical necessity guidelines. And the medical necessity guidelines that they had were referred to as MCG, Milliman Care Guidelines. They required that this young man be either a danger to himself, that there be a danger to others, or that there be a moderately severe psychiatric, behavioral, or other comorbid condition that causes serious dysfunction in daily living. This was a young man that from 2017 to 2020, when he was admitted to Intercept, had a series of really significant problems. We, you know, we're pretty familiar with the record. I mean, I read quite a bit about this case. And so, if I'm not mistaken, and you can correct me if I'm wrong, but the district court tossed the case out on a 12B6. Is that right? No, it was on motion for summary judgment. I'm confusing that with another case. Yeah. But the district court decided that abusive discretion review was appropriate here. That's correct, Your Honor. And he makes note of that in his order. In a footnote, I think it is. And he says that no party, that the parties did not dispute that abusive discretion review applies. Is that correct? Well, we argued, Your Honor, that it should not apply because of the California state prohibition on discretionary authority clauses. But the court in its decision said, I don't find that applicable for this particular type of policy. An abusive discretion standard is appropriate. So did you argue, did you have any discussion with the district courts about Abati? Well, we certainly rely on Abati and cite to Abati in our pleadings, both at the district court and at this level. We certainly believe that when you have a procedural irregularity that calls into question the integrity of the claim procedure process, that it should be reduced. So you only see a procedural problem here, not a substantive conflict? Well, certainly. And wasn't or isn't Blue Shield both the administrator and the funder of the plan? Yes, there's a conflict of interest. It's an inherent conflict of interest. And the Supreme Court in the Glenn case, Glenn v. Metlife, about 20 years ago, made it very clear that district courts and this court can take into account the inherent conflict of interest that exists. There is an inherent conflict of interest. Now, the district court didn't do that, correct? Didn't reference it at all. Did you suggest that he might do that? I don't recall, Your Honor, whether that's in the pleadings that we specifically pointed out and referenced it. It's something that is inherent. And the Supreme Court in Glenn said that. But that's... So do you think the district court has a sua sponte obligation to consider the inherent conflict or the apparent conflict that's on the record? I mean, it's obvious. It is obvious and it's inherent. And I can't tell you, Your Honor, that I'm aware off the top of my head with what the Ninth Circuit has done with that. So the answer to your question is I think that's something that should temper an abuse of discretion standard of review. We think that a deferential standard of review is satisfied easily in terms of the claims that we're making in this case, just because there are so many ways in which the district court ignored undisputed facts in the why this child satisfied the criteria for the MCG guidelines. That's the thrust of our argument. Part of your argument does seem to suggest that the administrator needs to give particular deference to your experts. That's not quite... No, I think that I agree with you, Your Honor, that Black and Decker versus Nord makes clear a treating physician rule that exists for social security doesn't apply in risk of cases. But it also says this, Your Honor, and this is an important statement that I think is something that the court did not focus on. Black and Decker, in Black and Decker, the Supreme Court said, plan administrators, of course, may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician. That's our contention, is that over and over again, there were several statements from treating physicians that were undisputed. They were in the medical records, and Blue Shield never bothered to dispute them in the pre-litigation appeal process. And that was an abuse of discretion, Your Honor. That's right. You said there were other procedural irregularities. The one that gave me some pause was that I think one of the criteria under... Is it the Magellan criteria or something like that? One of them talks about when they evaluate whether permanent residency is needed, is to look at various factors. And one of the factors was whether there had been attempts at a lower level care. Yes, that's right. And there doesn't seem to be any acknowledgement that he did go to a part-time residential care, and they kicked him out because he didn't want to go, and he would not cooperate, and he stopped going, and they said, well, we can't do anything for you. That's right. There was partial hospitalization, a PHP program, it's called, partial hospital programs. That's a lower level of care than residential treatment. There was intensive outpatient treatment. That's a lower level of care than residential treatment. And he also, of course, as you are aware, came directly into the Intercept program from an acute hospitalization, an inpatient acute care setting. And that's something that the treating physicians felt was necessary to scale him down and help him become more assimilated and have the kind of that he was getting to address his problems provided to him over a longer period of time so that he would more likely do well once he was discharged from the residential treatment center. None of that was, that was, those were talked about in the letters of medical necessity that the family submitted, but they were not addressed in detail or certainly not in a way that was fairly disclosed in the denial letters by Blue Shield. That's our position, Your Honor. That's right. There are, of course, this court has indicated also that there must be a full and fair review involving a meaningful dialogue that considers completely and fairly information presented in the appeal letters by families. In this particular appeal letter, as the record shows, the family went to great lengths, not just to present letters of medical necessity, but to account for Blue Shield what this child's medical history was like from 2017 to 2020 when the precipitating event here was that he basically threatened with physical injury his therapist. And his therapist was so concerned that they called and had him admitted to an inpatient hospitalization. Now, following that, he went into intercept. But the point that the family tried to emphasize in their appeal letters is the degree to which, as you say, Your Honor, there had been really intensive efforts to try and treat this young man at lower levels of care that were unsuccessful. And Blue Shield, the administrators didn't seem like they really acknowledged or dealt with that. That's the concern. And that's the failure to engage in a meaningful dialogue? Yes. And we rely on the Tenth Circuit and the Fifth Circuit for decisions in this area that we cited in the pleadings. And there are other circuits as well that have this to a significant extent. But the point is not that you have to have every jot and tittle of the points that are raised in an appeal addressed in order for that response to an appeal to be valid. The point is you have to have a meaningful recognition in response to an appeal that all the materials have been considered, a reference to some of the specific information in the medical records that justifies a continued denial, a reference to why the letters of medical necessity are invalid or too remote in time. They say now in litigation, well, they were too remote in time. That's, number one, not true. But more pointedly as to this meaningful dialogue issue, they never raised that in the pre-litigation appeal process. And that pre-litigation appeal process is critically important. I recognize an abusive discretion standard of review means when I come into litigation, I've got to, you know, I have an uphill battle facing me. But the critically important thing from the perspective of the federal judiciary is you've got to have a pre-litigation appeal process that has integrity, that is a full and fair review in the sense that there's a meaningful dialogue carried out. And to the extent that an insurance company like Blue Shield wants to play hide the ball or stonewall or change the rules in the ninth inning, you're going to have with claimants like my client feeling that they've had a full and fair review and we're going to see more cases in litigation at the district court and circuit court level that shouldn't be there. If you had a more meaningful exchange, a more fair exchange of information, people would maybe sometimes go away very disappointed, but at least they'd have an understanding of why the claim was denied and feel that they had been given a fair shot. I mean, I think there's a lot to be said for that. But when you talk about abusive discretion review, it's pretty deferential. And before Abati, at least when I was a district judge, the burden was on the plaintiff to show a conflict under Atwood, if I'm not mistaken. That's right. That was a Ninth Circuit case. And that case got revert, was set aside by Abati. And under Abati, I thought we had made it pretty clear that you needed the district court had an obligation to factor into its abusive discretion standard of review any conflict that was apparent from the record of what the parties brought to their attention. In fact, under Abati, there could even be additional discovery taken to ferret out the conflict. I think that's right, Your Honor. But it's not, you know, de novo versus abusive discretion. It can be abusive discretion that's tempered, you know, on a scale.  It's tempered. And the Glenn case from the Supreme Court made that pretty clear, too. Yes. So, and I'll reserve my time. Thank you. Thank you, Your Honors, and may it please the court. Caleb Wallinick on behalf of Blue Shield. I'd like to start with the standard of review and particularly getting to abusive discretion, which, as Your Honors noted, is a deferential standard. In the district court, the parties didn't argue that abusive discretion should be tempered. The district court was right in footnote two of its decision that the parties hadn't raised that. Plaintiffs didn't raise it in their opening brief. They didn't raise it in their reply brief. And so this is the first time I'm hearing my friend argue that this is, that the tempering should take place in the abusive discretion review. And we pointed out in our answering brief that there wasn't, that the district court hadn't reached this, that it hadn't been raised below, and that it didn't apply. And I think it is plaintiff's burden to bring up that there's a conflict of interest to allow us the chance to respond and to show that we have state courts. Well, let me ask you, do you think there's, from the record, do you think it's just obvious that there's a, you don't think it's obvious that there's a conflict? Well, so we have a plan that is fully insured with Blue Shield having discretion, but there's nothing else in the record and we would have been able to get into. Who funds the plan? It is a fully insured plan funded from contributions from the members.  But that's not... Isn't that a conflict? That's not the end of the analysis, though. Well, they were asking for, you know, it turns out $250,000. That's a lot of money to pay out. Well, Your Honor, to be very clear, we did not make a decision based on how much money is... No, I know, but I mean, you know, there is concern. I mean, these residential programs are expensive. Well, I understand... Who wants to pay for a residential program? If it's medically necessary, we absolutely will pay for it. We will follow the terms of the plan. And the plan says that services have to be medically necessary, as determined by Blue Shield. That's the standard. There's no dispute that we rely on the MCG guidelines. Suggestion that the second doctor, the independent doctor, was actually not independent? No. Who chose that doctor to look at this case? Advanced Medical Reviews is an independent company that Blue Shield contracts with. But there's been no challenge to his independence or his or her independence. So that's not also an argument that's been raised in this court that the AMR physician is somehow biased or is not truly independent. The regulations require an independent physician at the appeal stage, and we did that. And if plaintiffs were going to argue that he was somehow biased or lacked independence, they should have raised that, and then we could have addressed it in the district court. Same with tempering the standard of review. But even if there were some tempering of the standard of review, some skepticism, the abusive discretion standard is still whether it was... Can I ask you a question? I'm frankly a little bit confused. There's been some mention here of a tempered abusive discretion standard. I understand what abusive discretion is. I understand what de novo is, right? Clear error, de novo. Tell me, you know, what are we talking about with a tempered abusive discretion standard? I do think that it is somewhat of a difficult concept,  and I think in, I believe it's the Saloma case, Judge Kleinfeld talked about how this is somewhat of a different weighing. It's a little bit different because we're not... It's still abusive discretion. I think it just means that you take it into account. That is a factor to consider, and that's how in Abati and in subsequent cases... What is a factor you consider? If there's a conflict of interest, the conflict of interest would be taken into account. The administrator and the funder is the same person, Blue Shield. So the tempered abusive discretion is that you take into consideration that there is a conflict of interest, and then what do you do with that? You continue to apply the normal abusive discretion standards and ask whether the decision was... So you recite that you've taken into consideration, then you forget it? Well, Your Honor, again, this is not an argument that was raised in the district court, and so we didn't have the opportunity...  If I... So I think under this standard, if my friend were arguing that this skepticism should apply within the abusive discretion standard, I think that would be one other thing that this court would put into the mix to determine whether there was an abusive discretion, because abusive discretion is a holistic review. As I understand abusive discretion, if there's one single persuasive opinion that is properly in evidence, then the trier of fact can follow that opinion. I agree. We don't... So how do I temper that rule? In this case, I don't think it matters, because we have three physicians looking at the medical records as a whole, taking into account all of the documentation, reviewing them as a whole. There's been some suggestion in the reply brief that there's been a credibility determination. There's not been a credibility determination. Reading through the records, they talk about ER's diagnosis, his symptoms, his treatment history going back to 2011. They don't question the credibility. They recognize that there were prior threats made. They recognize the parent's concern. They don't minimize those symptoms. They just take them into account against the MCG guidelines, which there's no dispute apply. Those guidelines are a high bar. How do they deal with the fact that he was in the partial hospital facilities or whatever they're called? So the partial hospitalization program that your honor referenced, it was in 2018. He went for three days. I believe it was a Wednesday, Thursday, Friday. The following Monday, he didn't get out of the car. That was the end of it. Well, they kicked him out. They said no more. I read the record to be more that they weren't going to try to force him out of the car. It wasn't that he was expelled. It was that he didn't want to get out of the car. That was the last they tried. That does not show that in 2020, nearly two years later, that it was an abuse of discretion to determine that residential treatment, which is a very severe, intense form of treatment. It's one step short of admission to a full-fledged mental hospital. If you're looking at the continuum of care, that that level of treatment was not medically necessary. It comes with real costs to take a child away from their family, send them nearly a thousand miles from home for 15 months. That is a big deal. And the guidelines recognize that we're only going to do that in extreme circumstances where we're looking at persistent thoughts of suicide or homicide or serious harm, not just harm, but serious harm, that we're dealing with severe or serious disturbances in daily living, which Dr. Javed, the AMR physician, Dr. Chan all said wasn't present based on the totality of the circumstances. So saying that he tried three days of a partial hospitalization in 2018 doesn't show that there's an abuse of discretion. And as my friend agreed this morning, there's no need to go through every jot and tittle and every medical record. I don't think there's any way to read the letters from Dr. Javed and Dr. Chan or the AMR physician report and conclude that they are boilerplate or that they're not dealing with ER's actual symptoms, his treatment, his diagnosis. It was a full review just focused on his behaviors and the assessments of his treating providers and what his treatment providers, particularly at Intercept, were saying that he wasn't being documented for hallucinations. That's something that Intercept would have noted in its records had he shown that. They would have noted if he had had suicidal or homicidal ideations. But on February 13th, they said he was a minimal risk. On March 31st, they said that he had not evidenced any risk of harm since his arrival. When he was discharged in January of 2020, the discharging provider said that there was no evidence that he was a risk of imminent harm to himself or others. And he did not go straight into Intercept after that. There's basically a month that's mid-January to mid-February. It was not a pipeline based on the records that we've seen. There's a month there. And so the fact that in 20, that we didn't specifically call out the partial hospitalization in 2018, it's still too remote in time to show an abuse of discretion. Doesn't mean that it's irrelevant, but it's still too remote in time. It doesn't show that this decision was illogical, implausible, or without support from inferences that can be drawn from the record, which is the standard for abuse of discretion. The same goes for the serious dysfunction. The record showed that ER had generally appropriate interactions with his peers and with staff, that he was not socially withdrawn, that he was eating, sleeping, taking care of himself. He was doing well in school with accommodations that at his admission he had insight, he understood the need for treatment, that he was showing remorse. And so that's why Dr. Javed, Dr. Chan, the AMR physician all said that he didn't have either serious dysfunction or they phrased it differently in the AMR report, that there was no significant functional impairment. On the procedural requirements that have been talked about at length in the brief, the plain text of the regulations show that we complied fully with the procedures. Looking at the text and the structure of those regulations, subsections G and J are about the content of the letters. Subsection H is about the internal process. And the internal process does require a full and fair review. That's in the statute. It requires taking into account all of the documents. But that is a duty of analysis. It is not a duty of explanation. It does not mean that all of that has to show that it has to be in the report. And it is plaintiff's burden to show that there's been an abuse of discretion. I think- What are the regulations when they talk about dialogue? I'm sorry, I missed the first part of that. What do the regulations mean when they talk about dialogue? So the phrase meaningful dialogue is not- I don't believe it's in the regulations themselves. They come from this court's decision. Or our court's decision. Correct. That is a shorthand for the regulatory requirements. So in the letter, the requirements for the letters in subsections G and J, you have to set forth the specific reason here. The specific reason was that it was not medically necessary. That is the level of generality that this court and others have talked about when it comes to the specific reason. There has to be a description of other documents needed in the initial letter. We did that here. We provided a list of other documents that if plaintiffs wanted to provide them, they could do so, take that into account. There's an explanation of the clinical judgment for a medical necessity determination or an offer to provide that explanation. It's these kinds of things that form a meaningful dialogue. I think meaningful dialogue is a shorthand for what those requirements say. But in Black & Decker v. Nord, the Supreme Court, I believe on page 831 of that opinion, said that the scope of judicial innovation is narrowed. Well, we have a regulation. It is the Department of Labor that sets these requirements and determines what is and is not going to be required. And so the meaningful dialogue shorthand, I don't believe is a way to create new requirements. It is just simply looking back at the regs, which don't require explaining why there's a particular disagreement with a treatment provider. That's what Nord held, both in the substantive manner and in the procedural manner. And the Tenth Circuit just doesn't grapple with Nord in footnote 4, says that there's not even a procedural version of the treating physician rule. The regs don't require explaining the underlying process. That's what the First Circuit talked about in the Stephanie C case, cited in our brief. It doesn't require responding to every piece of evidence, as we've talked about here, as the Court noted in Collier, as the Tenth Circuit noted in David P. and in E.W. So this process, it was full, it was fair, and it was consistent. There's not been a bait-and-switch here. There's not been any sandbagging. We've been talking about the same plan provisions, the same MCG guidelines, the same medical records that plaintiffs submitted. And in the AMR report, which was provided, Dr. Gervais' notes were provided, plaintiffs understood that we were applying the MCG guidelines. They responded in a letter. But the letter itself, it doesn't say that plaintiffs, that ER meets the MCG guidelines. That letter attacks the MCG guidelines. And the physicians, or the treatment providers, that wrote their letters, they're fairly cursory, and they don't grapple with the MCG guidelines, even though... Let me just ask, your time is running out, and I just have one last question for you. How do you read a body? Does it impose any kind of obligation on the district court to make an assessment about the conflict of interest? I don't read a body that way. And again, I was looking back through my friend's argument to try to see if I brought a copy of a body with me. I didn't. And if this court has questions about that, I'm happy to submit additional briefing on it. But I think the most basic point is that this was not raised in the district court. It was not raised in the opening brief. It was not raised in the reply brief. Well, the district court seemed to be sensitive to it. I think the district court noted that this is an argument that is sometimes made. I think I read it a little bit differently. Well, so I read it to be that neither... So it says neither party contends that Blue Shield acted in a dual role because the parties did not raise the question of a potential conflict. Why do you think he did that? Because I think it is an argument that is often made, and it's an argument that we are able to respond to and to show that there are safeguards in place. And so to the extent that there's going to be any skepticism in the abusive discretion standard, that we would be able to respond to that. I see that my time has expired. Unless there are any further questions, the court should affirm. Thank you, counsel. Rebuttal. Thank you. Let me address, Judge Pez, your question about a body and specifically what the court said in footnote two. Because the court said, there is a built-in conflict of interest if the same entity that makes the eligibility decision also pays the benefits. Undisputed that that's what you have before you. And then the court says, because the parties did not raise the question of potential conflict, the abusive discretion standard applies. Well, even in the context of this conflict of interest, the abusive discretion standard applies. We don't dispute that. So we have no problems with what the court stated here in the sense that we don't dispute that it's an abusive discretion standard of review, but it is an inherent conflict that this court can and should take into account in the same way that the district court recognized it had the ability to take into account. So if there is a conflict of interest, then should the district court abandon the abusive discretion standard and go to a de novo standard? No, no. I think the case law is very clear about that. My friend and I agree that this is a tempered spectrum. It's sort of a sliding scale. You shake your head, Your Honor. I get it. I don't know how to help you other than this, other than this is something that should be taken into account by the district courts and all the courts when there is this inherent conflict of interest. And again, MetLife versus Glenn, the Supreme Court discussed that. I didn't cite that in my materials. I don't think my colleague did either. Does it mean if you're tempered, one single opinion is not enough, you need two or maybe three, or do two and a half is not enough? Your Honor, you are more familiar than I am with the phrase fact-sensitive inquiry. And I think that's what you're dealing with here. This is a very fact-sensitive inquiry. And I think what's a significant conflict in case A may not be a significant conflict in case B given the facts of cases A and B. So the extent that this is the same entity that's evaluating whether to pay the claim is also the entity that's deciding the appeal. That is a conflict of interest that's inherent and that this court can take into account. And the district court recognized that as well. I also want to talk about this meaningful dialogue issue. The Booten case, I think, was the most eloquent statement from the Ninth Circuit back in the 1990s of this need for there to be a fair consideration of information that's presented by claimants, by insurance companies, about whether claims should be paid or denied. And in that case, the Ninth Circuit said, look, you didn't fairly consider the information that the family submitted. That's exactly what we have here. We simply don't have enough information to give us assurance and should not give the Ninth Circuit assurance that Blue Shield really took into account these letters of medical necessity, the details of the medical records, the information from the parents that was detailed in their lengthy appeal letter. We just don't have consideration of those things and the details of those things by Blue Shield in a way that should give you comfort that the denial should be maintained. Unless you have other questions, I think I'm out of time. And you say there's no consideration because they don't mention it? Yes, they don't make any attempt to come to grips with that information. They don't make any attempt... Come to grips is different from mentioning. That's right, Your Honor. That's a fair point. They don't mention the letters of medical necessity and they don't mention any specific references to information in the medical records. They talk very generally and very conclusory. They're referring to the medical records, but they're not specific. So, thank you. All right, we thank counsel for their argument. The matter of RR versus California Physician Service is submitted for decision.
judges: PAEZ, BEA, FORREST